1   **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9   ME SPE Franchising LLC,                    No. CV-21-00458-PHX-DJH

10                  Plaintiff,                  **ORDER**

11  v.

12  NCW Holdings LLC, et al.,

13                  Defendants.

14

15         Following the Court's entry of default judgment (Doc. 49) against Defendants NCW

16  Holdings LLC, Envy One LLC, and Christine Winkelvoss (collectively "Defendants"),

17  Plaintiff ME SPE Franchising LLC ("Plaintiff") filed a Motion for Attorneys' Fees and

18  Expenses (Doc. 53).[1]  Defendants then re-appeared and filed a Motion to Vacate and Set

19  Aside Default Judgment (Doc. 63)[2] under Federal Rule of Civil Procedure 60(b).  Rule

20  60(b) allows the Court to relieve a party from a final judgment under limited circumstances.

21  Fed. R. Civ. P.  60(b).  The Court must decide whether Defendant's failure to defend the

22  present matter constitutes excusable neglect that warrants vacatur of default judgment.  For

23  the following reasons, the Court denies Defendants' Motion to Vacate and grants in part

24  Plaintiff's Motion for Attorneys' Fees and Expenses.

25

26  _____

    [1] The matter is fully briefed.  Defendants  filed a Response (Doc. 62) and Plaintiff filed a
27  Reply (Doc. 64).

28  [2] The matter is fully briefed.  Plaintiff filed a Response (Doc. 65) and Defendants filed a
    Reply (Doc. 69).

I.      **Background**[3]

This action concerns Franchise Agreements (the "Agreements") executed between Plaintiff and Defendants.[4]  (Docs. 1-1 ("Franchise Agreement #0730"); 1-2 (the "Guaranty Agreement"); 1-3 ("Franchise Agreement #0734")).  Plaintiff is a franchisor of massage therapy clinics and spas that operate nationwide under the name Massage Envy.  (Doc. 1 at ¶ 2).  Plaintiff uses "certain trademarks, service marks, trade names, logos, emblems, and indicia of origin, including, but not limited to, the name and mark 'Massage Envy®' (the 'Marks')."  (*Id*. at ¶ 16).

A.      **The Franchise Agreements and Arbitration**

Defendant NCW Holdings LLC entered into Franchise Agreement #0730 and Franchise Agreement #0734 with Plaintiff and obtained the right to operate Massage Envy clinics and use the Marks.  (Docs. 1 at ¶ 23; 20 at ¶ 23).  Contemporaneously, Defendant Christine Winkelvoss and formerly named defendant Nicole Connor[5] entered into the Guaranty Agreement in connection with each franchise.  (Docs. 1 at ¶ 24; 20 at ¶ 24).

The Agreements have prompted multiple litigations, including the present matter and concurrent arbitration proceedings.  On January 15, 2021, Defendants, through their "Arbitration Counsel", brought two arbitration actions against Plaintiff regarding the disputed Agreements.  *See AAA as NCW Holdings, LLC v. Massage Envy Franchising, LLC and ME SPE Franchising, LLC*, Case No. 01-21-0000-2123*; see also AAA as Envy One, LLC v. Massage Envy Franchising, LLC and ME SPE Franchising, LLC*, Case No. 01-21-0000-2125.

Plaintiff alleged Defendants continued their franchise operations after the Agreements expired.  Thus, Plaintiff filed a Complaint (Doc. 1) alleging the following five claims against Defendants: (1) federal trademark infringement; (2) federal unfair

---

[3] The Court's prior Order contains an extensive background, and the Court will not repeat it here. (Doc. 13 at 4–9).

[4] The original entity that entered into the Agreements with Defendants was Massage Envy Limited, LLC. (Doc. 1 at ¶2 n.1).  Plaintiff acquired Massage Envy Limited, LLC, in 2009, and this included the rights and obligations under the Agreements. (*Id*).

[5] Plaintiff voluntarily dismissed its claims in this action against Nicole Connor.  (Doc. 26).

competition; (3) common law unfair competition; (4) breach of the Franchise Agreements; and (5) breach of the Guaranty Agreement (*Id*. at ¶¶ 51–81). The first two claims were brought under the Lanham Act while the latter three claims were brought under Arizona state law per the Agreements' choice of law provision. (Docs. 1-1 at 44; 1-2 at 4; 1-3 at 59). Plaintiff also filed a Motion for Preliminary Injunction ("PI") (Doc. 9).

**B.    Procedural History**

Defendants first appeared in this matter to file a Motion for Extension of Time to File an Answer (Doc. 16), which the Court granted (Doc. 17). After obtaining a second extension per the parties' stipulation (Docs. 18; 19), Defendants filed their Answer (Doc. 20). Defendants also defended against Plaintiff's efforts to obtain a PI. (Doc. 23). The Court ultimately denied Plaintiff's request for a PI.   (Doc. 34).

Thereafter, the Court permitted Defendants' counsel at the time (Defendants' "Prior Counsel") to withdraw and stayed the case until December 17, 2021, to allow for Defendants to retain new counsel. (*See generally* Doc. 39). The Clerk of Court entered default against Defendants on January 5, 2021, for failing to re-appear. (Doc. 42)

On March 4, 2022, the Court ordered Plaintiff to file a status report since Plaintiff did not yet file a motion for entry of default judgment. (Doc. 43). Therein, Plaintiff explained the Clerk of Court's entry of default prompted the parties to re-engage in settlement talks in the concurrent arbitration proceedings.  (Doc. 44 at 2). Plaintiff represents it agreed to the material terms of a settlement with Defendants' Arbitration Counsel on January 5, 2022.  (*Id*.) Plaintiff further alleges it anticipated on receiving a revised draft of the settlement agreement throughout February 2022, as promised by Defendants, but never did. (*Id*.) Thus, Plaintiff moved for entry of default judgment on March 30, 2022. (Doc. 46).

The Court entered default judgment in favor of Plaintiff on July 14, 2022, because Defendants failed to pursue this matter or hire new counsel.  (*See generally* Doc. 48). Therein, the Court also issued an injunction that enjoined Defendants from operating their franchises.  (*Id*. at 4–7). Per the Court's Order, Plaintiff filed an application for fees and

costs on August 5, 2022, and requested an award of $299,934.27 in attorneys' fees and $1,940.98 in expenses. (*See generally* Doc. 53 at 1). Defendants then re-appeared and retained new counsel on August 19, 2022. (Doc. 63-1 at ¶ 27). Defendants now oppose Plaintiff's Motion for Attorneys' Fees and move for the Court to set aside the default judgment entered against them for excusable neglect.

Because it is dispositive, the Court will first consider the merits of Defendants' Motion to Vacate. The Court will then consider Plaintiff's Motion for Attorneys' Fees and Expenses.

## II. Defendants' Motion to Vacate and Set Aside Default Judgment

Defendants urge the Court to vacate its entry of default judgment on the bases that it has met all three *Falk* factors to establish excusable neglect under Federal Rule of Civil Procedure 60(b)(1). The Court will provide an overview of the legal standards before examining each *Falk* factor.

### A. Rule 60(b) Standards

Rule 55(c) of the Federal Rules of Civil Procedure provides that "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). Once default judgment has been entered, relief is governed by Rule 60(b), which sets forth six circumstances in which a court may relieve a party from a judgment. Fed. R. Civ. P. 60(b). When a defendant seeks to set aside default judgment under Rule 60(b)(1) based upon "excusable neglect," the court applies the same three factors governing the inquiry into "good cause" under Rule 55(c). *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). Those factors, commonly referred to by courts as the *Falk* factors, are: "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

The standard is disjunctive, which means a finding that any one of the *Falk* factors is true is sufficient for the court to refuse to set aside the default. *See Franchise Holding*,

*LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925–26 (9th Cir. 2004). Thus, if a default is entered "as the result of a defendant's culpable conduct," the court "need not consider whether a meritorious defense was shown, or whether the plaintiff would suffer prejudice if the [default] were set aside." *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988).

There are two policy concerns implicated by Rule 60(b). *Falk*, 739 F.2d at 463. First, Rule 60(b) is "remedial in nature and therefore must be liberally applied." *Id.* Second, default judgment "is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Id.* These policies support "the principle that 'the burden on a party seeking to vacate a default judgment is not extraordinarily heavy.'" *United States v. Aguilar*, 782 F.3d 1101, 1107 (9th Cir. 2015) (quoting *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 700 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex. rel. Breiner*, 532 U.S. 141 (2001)).

## B.    Defendants' Culpable Conduct

The first *Falk* factor asks whether Defendants' neglect in failing to defend the present matter is culpable or otherwise excusable. *TCI Grp.*, 244 F.3d at 697. "A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Akkelian v. Gevorkyan*, 833 F. App'x 467, 468 (9th Cir. 2021) (emphasis in original) (citation omitted). The Ninth Circuit applies two standards to determine whether a party "intentionally failed to answer." *Mesle*, 615 F.3d at 1092–93. Application of the appropriate standard depends on the party's degree of legal sophistication. *Martinez v. Auto Now Fin. Servs. Inc.*, 2022 WL 1395728, at *2 (D. Ariz. Apr. 18, 2022). The Court determines a party's legal sophistication by considering the defaulting party's previous familiarity with the legal process or any consultation with lawyers at the time of the default. *See id.* (citing *TCI Grp.*, 244 F.3d at 699 n.6) ("[I]t is fair to expect that individuals who have previously been involved in litigation or have consulted with a lawyer appreciate the consequences of failing to answer and do so only if they see some advantage to themselves.").

For a party that is not legally sophisticated, "the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Id.* at 1091 (quoting *TCI Group*, 244 F.3d at 697).  By contrast, a party that is legally sophisticated is held to a stricter standard and engages in conduct culpable if it has "received actual or constructive notice of the filing of the action and failed to answer[.]" *Mesle*, 615 F.3d at 1093.

There is, however, an exception under Rule 60(b)(1). Even if a court finds a defendant is culpable for failing to answer, it may nevertheless grant post-judgment relief if the defendant "offers a 'credible, good faith explanation' negating any 'bad faith' intentionality." *Martinez*, 2022 WL 1395728, at *3 (citations omitted).

## 1.    Defendants are Legally Sophisticated

As an initial matter, Defendants' continuous experience with legal proceedings establish they are legally sophisticated and therefore subject to the more stringent standard for culpability.  The procedural posture for the present default judgment is unique because Defendants indeed retained counsel to file an Answer and defend against Plaintiff's efforts to obtain a PI.  Although Defendants were unrepresented[6] at the time of default, Defendants concede they "remained represented . . . in a mass arbitration proceeding involving Plaintiff in another jurisdiction" through their Arbitration Counsel.  (Docs. 63 at 10; 63-1 at ¶ 6).  Defendants further claim to have been in "repeated communication" with their Arbitration Counsel throughout the duration of this matter regarding the Franchise Agreements.  (Doc. 63 at 10).

These circumstances indicate that Defendants have previous familiarity with the legal process regarding the present litigation as well as concurrent arbitration proceedings, both of which involve Plaintiff.  *Cf. Vistancia Dev. LLC v. Preston*, 2022 WL 2159053 (D.

---

[6] The Court permitted attorneys Jimmie W. Pursell, Daniel J. F. Peabody, and law firm of Jennings, Strouss & Salmon, PLC, to withdraw as attorneys of record for Defendants under E.R. 1.6.  (Doc. 39).

Ariz. June 15, 2022) (finding no legal sophistication in part because the defendants were not involved in any previous lawsuits with the plaintiff that would provide the defendants background familiarity with the legal process).  The fact Defendants had retained Prior Counsel in this action further demonstrates their degree of experience and implies they understood the consequences of their actions in declining to rehire counsel.  *See Mesle*, 615 F.3d at 1093.  Moreover, Defendants clearly understood the consequences of the injunction that resulted from the default judgment because they previously defended against it through Prior Counsel.  (*See generally* Doc. 23).  In sum, the Court concludes that Defendants are legally sophisticated and so the more stringent standard for culpability applies.

Defendants thus applied the improper standard for culpability in their Motion.  (Doc. 63 at 9) (applying the more lenient standard for non-legally sophisticated parties).  Rather, the Court must find that Defendants engaged in conduct culpable if they (1) "received actual or constructive notice of the filing of the action and failed to answer[;]" and (2) lack a good faith explanation for their default."  *Mesle*, 615 F.3d at 1093.  As mentioned, Defendants do not dispute that they received notice of the filings in this action and failed to re-appear. Defendants rather contend they are not culpable because they have a "credible, good faith explanation" for excusable neglect to respond.  *See Martinez*, 2022 WL 1395728, at *3.  As will be discussed below, the Court disagrees.

### 2.    Defendants Lack a Good Faith Explanation for their Default

In entering default judgment against Defendants, this Court already found "the possibility of excusable neglect is low" because "Defendants have appeared in this matter, and yet they have not maintained their defense." (Doc. 48 at 3).  Nonetheless, Defendants argue their default should be excused because they did not understand the impact of their Prior Counsel's withdrawal on the present action and reasonably believed that retention of their Arbitration Counsel in the concurrent arbitration proceedings was sufficient to maintain representation in the present matter.  (Doc. 63 at 10).  The Court agrees with Plaintiff that a multitude of Defendants' concessions directly undermine the credibility and reasonableness of their argument for excusable neglect.

### a.     Defendants' Explanation is not Credible

First, Defendants' explanation for neglecting to re-appear in this matter is not credible.  While admitting they understood that "the [C]ourt gave [them] until December 17, 2021 to find new counsel," Defendants chose not to take any action after "receiv[ing] assurances from [their Arbitration C]ounsel that they were close to a [settlement] agreement with [Plaintiff] that would resolve this [present] case." (Doc. 63-1 at ¶ 14). According to *Hartford Cas. Ins. Co. v. Malavos*, this suggests deliberate inaction on behalf of Defendants.  2005 WL 1836916 (E.D. Cal. Aug. 3, 2005).  The defendants in *Hartford* explained "they instructed their counsel to conserve resources and focus on the pending arbitration." *Id.* at *15. The district court rejected this as a credible, good faith explanation and presumed that the defendants, "in consultation with their attorney, [] intentionally ignored [the p]laintiff's suit, perhaps in an attempt to avoid the cost of litigation." *Id.* at *16.

*Hartford* is similar to the present case because both involve parallel arbitration proceedings.  Defendants concede they raised the continuous activity in the present matter to their Arbitration Counsel.  (Doc. 63 at 10).  Nevertheless, Defendants relied on the prospect of resolution of the pending arbitration in lieu of rehiring counsel for this case or responding to the Court's numerous filings and orders.  (Doc. 63-1 at ¶ 14, 17).  Moreover, after the Notice of Failure to Respond (Doc. 47), Plaintiff conferred with their Arbitration Counsel and decided to "stay under the radar."  (Doc. 63-1 ¶ 21).  Thus, Defendant's explanation for their inaction is insufficient to negate any bad faith intentionality.

### b.     Defendants' Explanation is not Reasonable

Second, Defendants' belief that their Arbitration Counsel would respond on their behalf or help them respond in the present matter is not reasonable.  Defendants admit they contacted their Arbitration Counsel with respect to the present matter on the following occasions:

(1)     December 29, 2021, regarding Plaintiff's Application for Entry of Default (Doc. 41);

- 8 -

(2)    April 15, 2022, regarding Plaintiff's Notice of Defendants' Failure to Respond to Motion for Default Judgment (Doc. 47); and

(3)    July 18, 2022, regarding the Clerk's Entry of Default Judgment (Doc. 49).

(Doc. 63-1 at ¶¶ 15, 21, 25).  In the interim, Defendants represent they were in constant communications with their Arbitration Counsel regarding draft settlement agreements.  (*Id.* at ¶¶ 16–20).  Defendants thus were aware for at least seven months that their Arbitration Counsel were not participating in the present matter.  It is also clear Defendants are capable of dealing with legal requirements given they had filed multiple requests for extension of time in this case. (Docs. 16; 18); *see, e.g.*, *Benny v. Pipes,* 799 F.2d 489, 494 (9th Cir.1986) (finding the defendants' failure to answer complaint was culpable when defendants had first filed motions to extend their time to answer, indicating an ability to deal with legal requirements).  Taken as a whole, these circumstances show Defendants were timely aware of the continuous filings in this Court and realized their Arbitration Counsel's lack of responsiveness to the present action.

Last, Defendants urge their neglect should be excused because, under *Mays v. Cavalry Staffing LLC*, they took "prompt action" in hiring present counsel within a month of the Court's entry of default judgment, and filing their motion to vacate soon after. (Doc. 63 at 12) (citing 2015 WL 13734998, at *3 (D. Ariz. Dec. 3, 2015)).  Defendants' analogy is meritless.  In *Mays*, the district court found the "[d]efendant took prompt action in seeking to set aside the default after allegedly *first learning about the lawsuit*[.]"  *Id.* (emphasis added).  Defendants cannot say the same is true here.   Moreover, Defendant's efforts to rehire counsel are far from prompt, as they did so eight months after this Court's ordered deadline. *Compare (*Doc. 39) (the Court ordered Defendants to rehire counsel by December 17, 2021) *with* (Docs. 55; 63) (Defendants rehired counsel and sought to set aside the default judgment in August 2022).

In sum, Defendants' belief that retention of their Arbitration Counsel in the concurrent arbitration proceedings was somehow sufficient to maintain representation in the present matter is not credible.  Neither do Defendants have a "good faith explanation"

for their failure to respond.  The Court acknowledges that the relationship between the arbitration proceedings and this case may have created some confusion to Defendants.  But the Court cannot ignore (a) the nine filings and orders[7] from the Court that Defendants have intentionally neglected or (b) the eight month lapse after Defendants' deadline to rehire counsel and re-appear in this matter all despite their ongoing activity in the concurrent arbitration proceedings.  Given these circumstances, the Court cannot find that Defendants' "knowing failure to answer was for understandable reasons and in no way designed to obtain strategic advantage in the litigation." *TCI Grp.*, 244 F.3d at 697 (citing *Falk*, 739 F.3d at 464).  Defendants have engaged in culpable conduct and thus there is no cause to vacate the default judgment.

### C.    Defendants' Meritorious Defenses and Prejudice to Plaintiff

Due to the disjunctive nature of the three *Falk* factors, Plaintiff has met its burden in establishing good cause by showing that default was entered as the result of Defendant's culpable conduct.  *Franchise Holding*, 375 F.3d at 926.  Therefore, the Court "need not consider whether a meritorious defense was shown, or whether the plaintiff would suffer prejudice if the [default] were set aside."  *Alan Neuman Productions, Inc.*, 862 F.2d at 1392.

### III.    Plaintiff's Motion for Attorneys' Fees and Expenses

Having affirmed the merits of Plaintiff's default judgment against Defendants, the Court will now consider Plaintiff's Motion for Attorneys' Fees and Expenses.  The Court permitted Plaintiff to file an application in accordance with Local Rule of Civil Procedure 54.2[8] when it granted Plaintiff default judgment against Defendants.  (Doc. 48 at 7).

---

[7] (*See* Docs. 39 (ordering Defendants to retain new counsel by December 17, 2021); 41 (Plaintiff's application for entry of default); 42 (entering default against Defendants); 44 (Plaintiff's status report); 45 (ordering Plaintiff to file a motion for default judgment by March, 21, 2022); 46 (Plaintiff's Motion for Default Judgment); 47 (Notice of Defendant's Failure to Respond); 48 (granting default judgment in favor of Plaintiff); 49 (entering default judgment against Defendants)).

[8] Local Rule 54.2 provides that the following documents must be attached to a motion for fees: (1) a Statement of Consultation; (2) a copy of a fee agreement or statement that there is no fee agreement; (3) a Task-Based Itemized Statement providing the required

1    Plaintiff requests an award of $299,934.27 in attorneys' fees and $1,940.98 in

2    expenses under the fee provision in the Agreements or, alternatively, under A.R.S. § 12-

3    341.01(A) (providing a "court may award the successful party reasonable attorney's fees"

4    in an action arising out of a contract).[9] (Doc. 53 at 4).  Plaintiff further argues its fee request

5    is reasonable under the factors listed in Rule 54.2.  (*Id.* at 6–10 (citing LRCiv 54.2(c)).

6    Defendants do not dispute that Plaintiff is eligible for fees or the reasonableness of the rates

7    charged.   However, Defendants contend the fee provision allows Plaintiff to recover on

8    some, but not all, of its claims.  (Doc. 62 at 2).  Defendants also argue Plaintiff's counsel

9    cannot recover fees for time spent on: (1) its efforts regarding the unsuccessful motion for

10   preliminary injunction; (2) its preparation of the present fee application; (3) its dealings

11   with former defendant Nicole Connor; and (4) its general clerical work.  (*Id.* at 3–4).

12       A party seeking an award of attorneys' fees must show it is eligible for and entitled

13   to an award, and that the amount sought is reasonable.  LRCiv 54.2(c).  The Court will first

14   determine  whether  Plaintiff  is  eligible  and  entitled  under  the  fee  provision  in  the

15   Agreements  or  under  the  A.R.S. § 12-341.01(A).   The  Court  will  then  assess  the

16   reasonableness of Plaintiff's request for attorneys' fees.

17   **A.      Eligibility**

18       Eligibility and entitlement to an award of attorneys' is dependent on "the applicable

19   statutory  or  contractual  authority  upon  which  the  movant  seeks  an  award[.]"  LRCiv

20   54.2(c)(1).  An award is proper if based on "a contract, an applicable statute, a finding that

21   the losing party acted in bad faith, or other exceptional circumstances."  *Sea-Land Serv.,*

22   *Inc. v. Murrey & Son's Co. Inc.*, 824 F.2d 740, 744 (9th Cir. 1987).  "The Ninth Circuit

23   has [] held the assignment of attorneys' fees based on a provision in a contractual

24   ────────────────

25   description of services rendered; (4) an affidavit of moving counsel; and (5) "[a]ny other
     affidavits  or  evidentiary  matter  deemed  appropriate . . . required  by  law."

26   LRCiv 54.2(d)(1)-(5).  Plaintiff has provided all attachments in compliance with the local
     rules.  (Docs. 53-3; 53-1 at ¶ 4; 53-2; 53-1).

27   [9] In its Reply, Plaintiff later raises the Lanham Act also permits recovery of attorneys' fees.
     (Doc. 64 at 6).  As explained *infra*, the Court finds Plaintiff is eligible for and entitled to

28   fees under the fee provision and A.R.S. § 12-341.01(A) and need not consider the Lanham
     Act.  *See infra* Section III.A–B.

1    agreement is enforceable." *Scottsdale Gas Co. LLC, v. Tesoro Ref. & Mktg. Co. LLC*, 2021

2    WL 2895501, at *2 (D. Ariz. July 9, 2021) (citing *Stitt v. Williams*, 919 F.2d 516, 529 (9th

3    Cir. 1990)).

### 1.    The Fee Provision

5    Here, the relevant Franchise Agreements executed by the parties include the

6    following fee provision:

## COSTS AND ATTORNEYS' FEES

If [Plaintiff][10] incur[s] expenses due to [Defendant NCW Holdings, LLC's]
failure to pay when due amounts owed to [Plaintiff], to submit when due any
reports, information, or supporting records, or otherwise to comply with this
Agreement, [Defendant] agree[s], whether or not [Plaintiff] initiate[s] a legal
proceeding, to reimburse [Plaintiff] for any costs and expenses which
[Plaintiff] incur[s], including, without limitation, reasonable accounting,
attorneys', arbitrators' and related fees.

(Docs. 1-1 at 42, 51; 1-3 at 42, 51); (*see also* 1-2 at 6) (holding Defendants' guarantor

liable for fees).    This fee provision is construed under Arizona state law per the

Agreements' choice of law provision. (Docs. 1-1 at 44; 1-2 at 4; 1-3 at 59).

Under Arizona law, "[a] contractual provision for attorneys' fees will be enforced

according to its terms." *Chase Bank of Ariz. v. Acosta*, 880 P.2d 1109, 1121 (Ariz. Ct.

App. 1994). "When parties bind themselves by a lawful contract, the terms of which are

clear and unambiguous, a court must give effect to the contract as written." *Grosvenor

Holdings, L.C. v. Figueroa*, 218 P.3d 1045, 1050 (Ariz. Ct. App. 2009). "However, a fee

request based upon a contractual provision requires pleading and proof." *Berry v. 352 E.

Virginia, L.L.C.*, 261 P.3d 784, 788 (Ariz. Ct. App. 2011) (citing *Robert E. Mann Constr.

Co. v. Liebert Corp.*, 60 P.3d 708, 712 (Ariz. Ct. App. 2003)).    If a party seeking fees fails

to cite the parties' contract in his pleadings and this consequently precludes a fee award on

that basis. *Id.* (finding "[t]he trial court properly disregarded the contract.").

Here, Plaintiff has sufficiently raised the parties' fee provision in its Complaint.

---

[10] As mentioned, Plaintiff acquired Massage Envy Limited, LLC, in 2009, and this included
the rights and obligations under the Agreements. (Doc. 1 at ¶ 2 n.1).

(Doc. 1 at ¶ 50).  The Court will therefore enforce the fee provision against Defendants according to its unambiguous terms.  *Chase*, 880 P.2d at 1121; *Grosvenor*, 218 P.3d at 1050.  The broad text of the fee provision is unconditional and requires Defendants to reimburse Plaintiff "for *any* costs and expenses which [Plaintiff] incur[s], including, *without limitation*, reasonable accounting, attorneys', arbitrators' and related fees." (Docs. 1-1 at 42; 1-3 at 42) (emphasis added).  Indeed, this district recently upheld a nearly identical fee provision.  *See Scottsdale*, 2021 WL 2895501, at *3 (citing *Stitt v. Williams*, 919 F.2d 516, 529 (9th Cir. 1990) ("Assignee shall *reimburse* Assignor upon demand for *any* costs and expenses, including *without limitation* attorneys' fees, for any efforts taken by Assignor . . . to otherwise enforce Assignor's rights hereunder.") (emphasis added).  Accordingly, Plaintiff is eligible, "without limitation," to all reasonable attorneys' fees, expenses, and costs associated with enforcing its rights under the Agreements. (Docs. 1-1 at 42, 51; 1-3 at 42, 51); *see Scottsdale*, 2021 WL 2895501, at *3 (citing *Sea-Land Serv., Inc.*, 824 F.2d at 744)).

## 2.    Attorney Fees Under A.R.S. § 12-341.01(A)

Plaintiff cites to A.R.S. § 12.341-01(A) (the "Statute") as an alternative means of recovering attorneys' fees.  The Statute provides that "[i]n any contested action arising out of contract, express or implied, the court may award the successful party reasonable attorney's fees."  A.R.S. § 12-341.01(A).  However, it "does not 'alter[ ], prohibit[ ] or restrict[ ]' contracts that 'provide for attorney fees,' nor may the statute 'be construed' to do so."  *Am. Power Prods. v. CSK Auto, Inc.*, 396 P.3d 600, 603 (Ariz. 2017) (citing A.R.S. § 12-341.01(A)).

As stated, the Statute permits the parties to contract for fee arrangements in their Agreements.  The Arizona Supreme Court has addressed the "interplay" between a governing fee provision and the Statute, clarifying that the Statute is not precluded when parties contract for a fee agreement governed by Arizona State law. *Id.* at 603–04. "[R]ather than being completely supplanted by any attorney fee provision" the Statute "applies to 'any contested action arising out of contract' to the extent it does not conflict

1    with the contract." *Id.* (applying the Statute's definition of a "prevailing party" when the
2    parties' fee provision did not expressly define its use of the term "successful party"). Thus,
3    both sources of authorities apply and the Statute is only "inapplicable by its terms if it
4    effectively conflicts with an express contractual provision governing recovery of attorney's
5    fees." *Id.*

6         Defendants argue the Statute precludes Plaintiff from recovering costs, and Plaintiff
7    has not met its burden of persuasion to show why the Statute applies (Doc. 62 at 4).
8    Defendants cite *Associated Indem. Corp. v. Warner* for the proposition that an award of
9    fees under A.R.S. § 12-341.01(A) is not mandatory.  694 P.2d 1181, 1183 (Ariz. 1985).
10   Indeed, *Associated Indem. Corp* lists the factors a court should weigh when determining
11   whether to grant attorneys' fees under A.R.S. § 12-341.01(A) because the statute does not
12   establish a presumption that fees be awarded.  *Id.* at 1184.

13        However, the state court in *Associated Indem. Corp* dealt with a request for fees
14   under the Statute alone, and made no mention of an independent fee agreement in the
15   parties' contract.  Plaintiff here is eligible for fees under *both* the fee provision and the
16   Statute.  And, as mentioned, A.R.S. § 12-341.01(A) cannot be applied to alter, prohibit, or
17   restrict the fee provision in the way Defendants propose.  *Am. Power Prods.,* 396 P.3d at
18   603 (citing  A.R.S. § 12-341.01(A)).

19        Accordingly, under the fee provision and the Statute (to the extent the Statute is
20   consistent with the fee provision), Plaintiff is eligible for a reasonable award of all
21   attorneys' fees, expenses, and costs associated with enforcing its rights under the
22   Agreements.

23        **B.    Entitlement**

24        While Defendants do not dispute Plaintiff is eligible for fees under the fee provision,
25   they contest the extent to which the fee provision entitles Plaintiff to a recovery.  As
26   mentioned, Plaintiff filed suit against Defendants for one trademark infringement action,
27   two unfair competition actions under federal and common law, and two breach of contract
28   actions. (Doc. 1 at ¶¶ 51–81).  Defendants argue Plaintiff's recovery is limited to work

associated with its breach of contract claims only. (Doc. 62 at 2).  Defendants reason the fee provision "may not be interpreted to allow fees for work on Lanham Act [or common law unfair competition] causes of action."  (*Id.*)  On the other hand, Plaintiff argues the fee provision allows for recovery on all claims because each were brought as a result of Defendants' breach of its obligations under the Agreements.  (Doc. 64 at 2).  The Court agrees with Plaintiff.

"It is well-established that a successful party on a contract claim may recover not only attorneys' fees expended on the contract claim, but also fees expended in litigating an interwoven tort claim."  *Modular Mining Sys., Inc. v. Jigsaw Technologies, Inc.*, 212 P.3d 853, 860 (Ariz. Ct. App. 2009).  Claims are interwoven when they are based on the same set of facts and involve common allegations, which require the same factual and legal development. *Id.* at 860–61; *see also Zeagler v. Buckley*, 219 P.3d 247, 249 (Ariz Ct. App. 2009) (holding that fees may be awarded when "claims are so interrelated that identical or substantially overlapping discovery would occur").   When Lanham Act claims are "substantially dependent upon provisions of the agreement and the ability to prevail on the contract claims[,]" they are "inextricably interwoven with the contract claims."  *Skydive Ariz., Inc. v. Hogue*, 360 P.3d 153, 166 (Ariz. Ct. App. 2015) (internal citation and quotations omitted) (finding that the plaintiff's Lanham Act claims were interwoven with contract claims because the "Lanham Act claims necessarily fail unless [plaintiff] prevailed on its contract claims").

Here, all of Plaintiff's claims directly depend on Defendants' obligations under the Agreements.  Plaintiff's trademark infringement claim is based on the allegation that Defendants continue to use Plaintiff's Marks "despite their obligation to cease use of the Marks upon expiration or termination of the Franchise Agreements." (Doc. 1-1 at ¶ 52).[11]

---

[11] The Agreements provide that "when [it] expires or is terminated for any reason: [Defendants] shall not directly or indirectly at any time or in any manner . . . use any Mark, any colorable imitation of a Mark, any trademark, service mark or commercial symbol that is confusingly similar to any Mark, or other indicia of a Massage Envy Clinic in any manner or for any purpose; or [] use for any purpose any trade name, trademark, service mark or other commercial symbol that indicates or suggests a connection or association with [Plaintiff] ." (Docs. 1-1 at 37; 1-3 at 37).

1    Plaintiff's unfair competition claims are likewise based on the allegation that Defendants

2    continue to operate Massage Envy clinics and cause confusion in the public, despite their

3    obligation not to identify as a franchisee or compete against Plaintiff upon expiration or

4    termination of the Franchise Agreements.  (Doc. 1 at ¶¶ 58, 63).[12]  Therefore, these claims

5    are interwoven with Plaintiff's contract claims because they necessarily fail unless Plaintiff

6    prevails on its breach of contract claims.  *See e.g. Skydive*, 360 P.3d at 166.

7         The Court thus finds Plaintiff is entitled to a reasonable award of all fees and

8    expenses associated with all of its claims under the parties' fee provision and

9    A.R.S. § 12.341-01(A)

10       **C.   Reasonableness of Fees**

11        The Court must now assess Plaintiff's requests for $299,934.27 in attorneys' fees.

12    A party is "entitled to recover a reasonable attorney's fee for every item of service which,

13    at the time rendered, would have been undertaken by a reasonable and prudent lawyer to

14    advance or protect his client's interest in the pursuit" of a successful claim.  *Schweiger v.*

15    *China Doll Rest., Inc.*, 673 P.2d 927, 932 (Ariz. Ct. App. 1983) (quoting *Twin City*

16    *Sportservice v. Charles O. Finley & Co.,* 676 F.2d 1291, 1313 (9th Cir.)).  Once the party

17    seeking fees has met its initial burden of showing reasonableness of the fees sought, "[t]he

18    party opposing the fee application has a burden of rebuttal that requires submission of

19    evidence to the district court challenging the accuracy and reasonableness of the hours

20    charged or the facts asserted by the prevailing party."  *Gates v. Gomez*, 60 F.3d 525, 534–

21    35 (9th Cir. 1995), *as amended* (Aug. 3, 1995).

---

[12]  The Agreements provide that "when [it] expires or is terminated for any reason: [Defendants] shall not directly or indirectly at any time or in any manner . . . identify [themselves] or any business as a current or former Massage Envy Clinic or as one of [Plaintiff's] franchisees.  (Docs. 1-1 at 37; 1-3 at 37).  The Agreements also provide the following covenant not to compete:

[F]or eighteen (18) months beginning on the effective date of termination or expiration [of the Agreement] . . . no member, shareholder or partner . . . and neither you nor any member of your immediate family will have any direct or indirect interest . . . in any Competitive Business . . . operating at the Site[.]

(Docs. 1-1 at 38; 1-3 at 38).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983).  This calculation is commonly known as the "lodestar" method.  *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989).  To determine whether a request is reasonable, courts assess the following factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976); *see also* LRCiv 54.2(c)(3).  Once this initial lodestar figure is calculated, courts may then adjust the result by considering "other factors."  *Blanchard*, 489 U.S. at 94.

### 1.    Time and Labor Required

Plaintiff represents this case required 425.1 hours of its counsel's time.  (Doc. 53 at 7).  Although Plaintiff obtained default judgment, this case is unique because default judgment was sought after a defendant appeared, defended against a preliminary injunction, and then failed to re-appear.  This matter thus required substantially more time and labor than an ordinary default judgment case, and justifiably so.   Nonetheless, Defendants argue this figure should be reduced because Plaintiff's counsel cannot recover fees for time spent on: (1) its efforts regarding the unsuccessful motion for preliminary injunction; (2) its preparation of the present fee application; (3) its dealings with former defendant Nicole Connor; and (4) its general clerical work.  (Doc. 62 at 3–4).  The Court will consider each of Defendants' proposed reduction.

### a.    Efforts to Seek a Preliminary Injunction

First, Defendants seek to deduct 127.7 hours for Plaintiff's work seeking a

preliminary injunction, arguing Plaintiff cannot recover fees for an unsuccessful motion. (Docs. 62 at 3; 62-2).  But the text of the fee agreement is unconditional and does not limit Plaintiff's recovery to fees on successful motions only.  (*See* Docs. 1-1 at 42, 51; 1-3 at 42, 51).  Plaintiff is eligible for and entitled to *all* reasonable attorneys' fees, expenses, and costs associated with enforcing its rights under the Agreements.  *See supra* Section III.A–B.  To be sure, a request for attorney fees is already reduced for any unsuccessful claims (none here) and "may not be reduced . . . again if the final award reflects only partial success."  *Cunningham v. Cnty. of Los Angeles*, 879 F. 2d 481, 488 (9th Cir. 1988); *see also Schweiger*, 673 P.2d at 933 ("[W]here a party has accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories.").  The Court finds Plaintiff's request need not be reduced in this respect because it has prevailed on the entirety of its claims, including its request for an injunction, upon receiving default judgment against Defendants.

### b.      Efforts to Prepare the Fee Application

Second, Defendants seek to deduct 16.2 hours from Plaintiff's time spent on preparing the present application.  (Doc. 62 at 3).  They represent that Plaintiff's claimed 24.3 hours should be reduced by two-thirds because the application and supporting declaration are "substantially the same as documents filed by DLA Piper in prior litigation" and should not have taken that long to compile.  (Doc. 62 at 3) (citing *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, No. CV-18-04189-PHX-JAT (D. Ariz. Apr. 2020), (Docs. 36-1; 39-1)).  But the documents Defendants compare is by an entirely different attorney at DLA Piper, dealing with an entirely different client, and compiling a task-based itemized statement for an entirely different case.  (*Id*).  Furthermore, Defendants' citation to *Anderson v. Dir., Office of Workers Compensation Programs* for a two-thirds reduction rule is unhelpful.  91 F.3d 1322, 1325 (9th Cir. 1996).  That case did not even address the issue of excessive preparation fees on appeal.  *Id.*  ("[T]he question on appeal is not the reasonableness of the amount [of preparation hours] claimed, but whether any compensation for preparing fee applications must be included as part of an award. Our

1    cases say they do.").  The Court therefore finds Defendants have not shown why the hours

2    associated with preparation of the fee application are unreasonable.

3                    **c.      Work Related to a Formerly Named Defendant**

4           Third, Defendants seek to deduct 8.7 hours of Plaintiff's time dealing with former

5    defendant Nicole Connor,[13] arguing they are not liable because Plaintiff voluntarily

6    dismissed Nicole Connor from this case.  (Docs. 62 at 4; 62-3 at 4–5).  Again, nothing in

7    the fee provision limits Plaintiff's entitlement to reasonable attorneys' fees, expenses, and

8    costs associated with enforcing its rights under the Agreements.  Even so, such time spent

9    with Nicole Conner is an "item of service which, at the time rendered, would have been

10   undertaken by a reasonable and prudent lawyer to advance or protect his client's interest"

11   and thus entitled to reasonable fees.  *Schweiger*, 673 P.2d at 932 (quoting *Twin City*

12   *Sportservice*, 676 F.2d at 1313)).  The Court therefore finds Defendants have not shown

13   why the hours associated with former defendant Nicole Connor are unreasonable.

14                            **d.      Clerical Work**

15          Last, Defendants seek to deduct 32.7 hours from Plaintiff's award, arguing such

16   time is either too generalized or involve clerical work.  (Docs. 62 at 4; 62-4 at 2–4, 6–7,

17   11).  "[A]ttorneys' fees are not awarded for clerical tasks" because such work should be

18   subsumed in a law firm's overhead.  *Scottsdale*, 2021 WL 2895501, at *5; *see J & J Sports*

19   *Prods. Inc. v. Patel*, 2018 WL 1609731, at *3 (D. Ariz. Apr. 3, 2018); *see also Nadarajah*

20   *v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009).  Purely clerical tasks are those "such as filing

21   documents and preparing and serving summons." *Arndt v. Comm'r of Soc. Sec. Admin.*,

22   2019 WL 3997360, at *3 (D. Ariz. Aug. 23, 2019) (quoting *Neil v. Comm'r of Social Sec.*,

23   495 Fed. Appx. 845, 847 (9th Cir. 2012).  It may also include "scheduling, calendaring

24   activities, and bates labeling documents."  *Scottsdale*, 2021 WL 2895501, at *5 (quoting

25   *eMove Inc. v. SMD Software Inc.*, 2012 WL 4856276, at *7 (D. Ariz. Oct. 11, 2012), *aff'd*,

26   569 F. App'x 527 (9th Cir. 2014)).  However, courts in this district have allowed parties to

27

28   ---
[13] Plaintiff represents Defendants' obligation to reimburse Plaintiff for fees and expenses is joint and several under the Agreements, and propose "Defendants may later seek a right of contribution from [Nicole] Connor."  (Doc. 64 at 9).

1  collect fees for clerical tasks "when billed at an administrative assistant rate." *Id.* (citing *J*
2  *& J Sports*, 2018 WL 1609731, at *6.

3        At the outset, Plaintiff has not provided an administrative assistant rate and the
4  Court will not allow Plaintiff to recover any clerical tasks at an attorney or paralegal rate.
5  The Court further agrees, upon review of Defendants' proposed reductions, that Plaintiff's
6  Task-Based Itemized Statement includes the following clerical tasks that do not merit
7  recovery: "coordinate preparation" of tasks; "coordinate," "facilitate," and "direct" filings;
8  general "emails"; "considering status of service"; and "coordinate scheduling." (Doc. 62-
9  4 at 2–4, 11). The Court will accordingly deduct the hours spent on those clerical tasks.
10 However, despite Defendants' protest, the Court finds Plaintiff can recover fees for tasks
11 associated with preparing the complaint and motions and revision of pleadings because
12 such tasks are not clerical in nature. *See Arndt*, 2019 WL 3997360, at *3 (finding that
13 preparing the Complaint, the Summonses, and the Cover are not purely clerical in nature);
14 *see also eMove Inc.*, 2012 WL 4856276, at *7 (finding that proofreading, cite-checking,
15 and revising motions are not clerical or secretarial tasks).

16       In sum, the Court will deduct 4.4 hours, which amounts to $3,338.22,[14] for clerical
17 tasks performed by Plaintiff's counsel. The Court otherwise affirms the remainder of
18 Plaintiff's requested time and labor as reasonable for the purpose of its fee request.

19                      **2.      Novelty and Difficulty**

20       It is well recognized that injunctive relief, as an issue in this case, is difficult to
21 obtain. Beyond that, Plaintiff represents it encountered a number of procedural challenges
22 due to Defendants' missed discovery deadlines, frequent requests for extension of time,
23 and failure to re-appear after their counsel withdrew from the case. (Doc. 53 at 8).

24                       **3.      Requisite Skill**

25       The Court finds it requires specialized knowledge to litigate cases that include
26 claims under the Lanham Act.

27 / / /

28 ───────────────────
[14] To reach this value the Court multiplied the respective clerical work hours by the
performing attorney's 2021 billing rate.

### 4.     Preclusion of Other Employment

Plaintiff's counsel explain they were not precluded from other employment as a result of their representation of Plaintiff in this action.  (*Id.*)

### 5.     Customary Fee

Plaintiff explains its counsel has provided it with legal services "for more than a decade on franchise and other matters, and has been [Plaintiff's] primary litigation in franchise disputes for the last eight years."  (*Id.*)  Thus, Plaintiff was charged customary rates ranging from $328–$352.50 for paralegals and $610.90–$783.10 for attorneys. (Docs. 53 at 7; 53-1 at ¶¶ 12–16, 20, 26).   These rates were all discounted from the paralegals and attorneys' standard hourly rates.  (*Id.*)

Plaintiff cites case law within this district to justify these rates as reasonable.  (Doc. 53 at 9) (citing *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, 2020 WL 1694739 (D. Ariz. Apr. 7, 2020), *aff'd sub nom. ThermoLife Int'l, LLC v. Am. Fitness Wholesalers, L.L.C.*, 831 F. App'x 325 (9th Cir. 2020) (finding Plaintiff's counsel rates between $690 and $890 and paralegal rates of $355 to be reasonable).  Defendants do not dispute the reasonableness of these rates.

### 6.     Fixed or Contingent Fee

Plaintiff did not enter into a contingency fee agreement with their attorneys. Plaintiff was charged at fixed rates per hour in tenth-of-an-hour increments for time spent working on this matter.  (*Id.*)

### 7.     Time Limitations

There is no indication that Plaintiff imposed any specific time limitations on counsel.

### 8.     Amount Involved and Results Obtained

Plaintiff obtained injunctive relief, which the court finds is of substantial value in ensuring Plaintiff's franchisor rights under the Agreements.

### 9.     Experience, Reputation, and Ability of the Attorneys

Plaintiff's counsels represent they are "experienced attorneys with particular and

specific experience handing franchise disputes and complex litigation matters." (*Id.* at 10). The claim they are "known, sought out, and retained specifically for this experience." (*Id.*)

### 10.    The Case's Undesirability

The Court finds that this case is neither particularly desirable nor undesirable.

### 11.    Nature and Length of relationship with the Client

Plaintiff's counsel represents it has "a long and significant history as counsel to [Plaintiff]," and has represented Plaintiff "in dozens of matters over the years, including numerous franchise, contract, Lanham Act, and other brand protection matters." (*Id.*)  The Court agrees this relationship allows for effective representation of Plaintiff because "counsel has a deep knowledge and understanding of [Plaintiff's] business systems, policies, procedures, franchise agreements, personnel, and business objectives." (*Id.*).

### 12.    Awards in Similar Cases

As Plaintiff notes, this case is not an ordinary default judgment case in which a defendant has failed to appear in any instance.  Defendants appeared, defended against a preliminary injunction, withdrew counsel, remained unresponsive for eight months, and then re-appeared to defend only after default judgment was entered.  This case spanned a course of 18 months from its inception to entry of default and the subsequent request for attorneys' fees.  Thus, Plaintiff represents it is difficult to locate similar cases to compare awards due to this discrete set of facts and unique procedural posture.  (Doc. 53 at 10).

The Court finds *Mister Softee, Inc. v. Tsirkos* instructive. No. 14 CV 1975-LTS-RLE, (S.D.N.Y. May 5, 2016) (Doc. 228).  There, franchisor plaintiffs also filed suit against franchisee defendants for trademark infringement, unfair competition, and state law claims for breach of contract. *Id.* (Doc. 228 at 1).  Defendants appeared, defended against a preliminary injunction, violated the preliminary injunction, was held in contempt by the court, withdrew counsel, defaulted, and never re-appeared. (*Id.* at 2–3).  This case spanned a course of 23 months from its inception to entry of default and the request for attorneys' fees.  The New York district court issued the franchisor plaintiff an award of $339,863.85 in fees and expenses.  (*Id.* at 6).

- 22 -

Here, Plaintiff requests an award of $301,875.25 in fees and expenses, which is less that the award in *Mister Softee, Inc*. And although *Mister Softee, Inc.* entailed more litigation proceedings, including contempt proceedings, this is offset by the rates in that case being substantially lower than the present case. *Compare* (*Id.* at 4–5) (*Mister Softee, Inc.* attorney rates ranging from $200–$425) *with* (Docs. 53 at 7; 53-1 at ¶¶ 12–16, 20, 26) (attorney rates ranging from $610.90–$783.10). Overall, the circumstances and award in *Mister Softee, Inc*. are similar to the present case. The Court will follow suit and finds Plaintiff's requested award is reasonable.

To summarize all twelve factors, the Court finds Plaintiff's request for fees is reasonable under the fee provision and A.R.S. § 12-341.01(A) to the extent it does not include clerical tasks. The Court will therefore reduce Plaintiff's request by $3,338.22 and grant an award of $296,596.05 in fees

### C.    Expenses

The Court last turns to Plaintiff request for $1,940.98 in expenses. Defendants seek to deduct $382.11 of expenses that are related to former defendant Nicole Connor. (Docs. 62 at 4; 62-3 at 16–17). Again, the fee provision entitles Plaintiff to all reasonable attorneys' fees, expenses, and costs associated with enforcing its rights under the Agreement. (Docs. 1-1 at 42, 51; 1-3 at 42, 51). Furthermore, the Court has already found that Plaintiff's dealings with former defendant Nicole Connor merit recovery of fees. *See supra* Section III.C(1). The Court will thus award Plaintiff the entirety of its requested expenses under the fee provision and A.R.S. § 12-341.01(A).

### IV.    Conclusion

The Court finds Defendants have engaged in culpable conduct in failing to re-appear in this matter. Accordingly, there lacks cause to vacate the default judgment under Federal Rule of Civil Procedure 60(b). The Court further finds Plaintiff is eligible for and entitled to an award to award of all fees and expenses associated with all of its claims under the parties' fee provision and A.R.S. § 12.341-01(A). Plaintiff's request for fees and expenses are reasonable to the extent it does not include clerical tasks. The Court therefore approves

an award of $296,596.05 in fees and $1,940.98 in expenses to Plaintiff.

Accordingly,

**IT IS ORDERED** that Defendants NCW Holdings LLC, Envy One LLC, and Christine Winkelvoss' Motion to Vacate and Set Aside Default Judgment (Doc. 63) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff ME SPE Franchising LLC's Motion for Attorneys' Fees and Expenses (Doc. 53) is **GRANTED in part**.  The Court approves an award of $298,537.03, which is comprised of $296,596.05 in attorneys' fees and $1,940.98 in expenses.

**IT IS FINALLY ORDERED** that this case is hereby dismissed and the Clerk of Court is kindly directed to enter judgment accordingly.

Dated this 29th day of March, 2023.

Honorable Diane J. Humetewa
United States District Judge